BRUNK v. MERCHANTS NATIONAL BANK, EXECUTOR.

4-9230                                    230 S. W. 2d 932

Opinion delivered June 19, 1950.

*Gutensohn & Ragon, Wilder & Morgan, Floyd E. Barham, Warner & Warner* and *Lem C. Bryan,* for appellant.

*Daily & Woods* and *Wm. K. Harris,* for appellee.

DUNAWAY, J.  This suit was filed by the Merchants National Bank of Fort Smith, as Executor of the estate of George C. Brinkmann, deceased, for a construction of the decedent's last will and testament.

These are the issues which we must decide on this appeal:

(1)  Did the decedent die intestate as to his real property, as is contended by appellant Ruth Brinkmann Brunk?

(2)  Was Ruth Brinkmann Brunk the legally adopted daughter of the decedent?

(3)  Should the will be reformed to correct an alleged mistake in the bequest to Lola Brinkmann Strojost, a niece of the decedent and one of the appellants here?

(4)  Was there a delivery of a deed to certain real property executed by the decedent to his foster daughter, Lillian Trapp, one of the appellees here; and if not, was there an enforceable contract made by the decedent to devise or convey to her said real estate?

The Chancellor held that the decedent's real estate was disposed of by the residuary clause of his will; that Ruth B. Brunk was the decedent's legally adopted daughter; that there should be no reformation of the bequest to Lola B. Strojost; and that there was both a contract to devise or convey certain real property to Lillian Trapp, and a constructive delivery to her of a deed to said property.

The questions presented will be discussed in the order above-stated.

The pertinent parts of the will on the issue of intestacy as to real estate are as follows:

".  .  .  I, George C. Brinkmann, of Fort Smith, Arkansas, of legal age and of sound and disposing mind

and memory, and knowing the uncertainty of life, and the certainty of death, and desiring to make disposition of my property while I am able so to do . . .

"I give, devise and bequeath to the following named churches and benevolent organizations, as follows: (then follows a list of charitable institutions with bequests to each in designated amounts). If there should be left, after paying amounts donated to the above named Churches and Benevolent Organizations I direct that said amounts be paid to said named churches and benevolent organizations in accordance to the amounts that I have given to each of said Churches and Benevolent Associations."

Appellant Ruth B. Brunk contends that the language in the residuary clause—"If there should be left, after paying amounts donated to the above named churches and benevolent organizations I direct that said *amount* . . . "be paid proportionately to these charities— referred only to money or personal property, and was not sufficient to dispose of the testator's real estate, which was nowhere specifically mentioned in the will. In urging this construction, she relies on the rule as stated in *Williams* v. *Norton,* 126 Ark. 503, 191 S. W. 34, that "an heir can be disinherited only by express devise or necessary implication, so strong that a contrary intention cannot be supposed; that the heir cannot be disinherited unless the estate is given to somebody else."

The will in question must, however, be construed in accordance with other established rules as well. In *Lockhart* v. *Lyons,* 174 Ark. 703, 297 S. W. 1018, we said at p. 706: "The true rule in the construction of wills, which can be said to be paramount, is to ascertain or arrive at the intention of the testator from the language used, giving consideration, force and meaning to each clause in the entire instrument.

. . . . . . .

"A testator is presumed to intend to dispose of his entire estate, and it must be borne in mind, in the construction of wills, that they are to be so interpreted as

to avoid partial intestacy, unless the language compels a different construction. . . ."

See, also, *Badgett v. Badgett,* 115 Ark. 9, 170 S. W. 484; *Morris* v. *Lynn,* 201 Ark. 310, 144 S. W. 2d 472.

Also applicable to the case at bar are these rules stated in *Galloway* v. *Darby,* 105 Ark. 558, 151 S. W. 1014 at pp. 572-573, 44 L. R. A., N. S. 782, Ann. Cas. 1914D, 712.

"The presumption against intended intestacy leads to a liberal, rather than to a restrictive, construction of the residuary clause, in the will, in order to prevent partial intestacy.

.     .     .     .     .     .

"The rule is that the testator's intention is to be ascertained from the whole will. . . . Hence it follows that language which in a general or residuary clause may not alone be sufficiently conclusive to dispose of all the property of the testator may have its meaning enlarged to correspond with an intention shown in the introductory clause."

Although the testator in the introductory clause of his will did not say he intended to dispose of "all" his property, he did state his intention of disposing of his "property" without limitation. He then made substantial specific bequests to a number of his relatives, including $2,500 to Ruth B. Brunk. In addition, the proof shows that the same day the will was executed, he executed and had delivered to her a deed to his home in Fort Smith. The testator certainly did not disinherit this appellant.

We have concluded, from a consideration of the whole will, that the Chancellor correctly held that the testator intended to dispose of his entire estate. The decedent's real estate passed under the residuary clause to the charities named therein.

The next question concerns the legality of the adoption of Ruth B. Brunk. On October 8, 1934, George C. Brinkmann and his wife, Lena, filed petition in the Probate Court for the Fort Smith District of Sebastian

County to adopt Ruth Bute. In the petition it was stated that the child was fourteen years of age and had been in petitioners' custody since July 4, 1932, and that Ruth was a resident of Sebastian County. The Probate Court endorsed on the back of the petition: "Petition approved this 8th October, 1934. (signed) R. P. Strozier, Probate Judge." The formal order of adoption failed to state that the child was a resident of Sebastian County, a jurisdictional defect which would render the adoption void under our holdings in *Morris* v. *Dooley,* 59 Ark. 483, 28 S. W. 30 and 430 and *Minetree* v. *Minetree,* 181 Ark. 111, 26 S. W. 2d 101.

On August 13, 1949, while this suit was pending, an order *nunc pro tunc* in the adoption proceedings was entered on petition of Ruth B. Brunk without notice to anyone, correcting the original adoption order to state the required residence. The validity of the original order and of the *nunc pro tunc* order entered without notice is challenged. We do not deem it necessary to discuss the order *nunc pro tunc;* for an attack on the original order of adoption is barred by limitations under the provisions of § 3 of Act 408 of the Acts of 1947. We held § 3 of that Act to be a valid statute of limitations in the recent case of *Dean* v. *Brown,* 216 Ark. 761, 227 S. W. 2d 623. There we said: "The entire matter of adoption is statutory, and the Legislature in said § 3 enacted that when (a) adopting parents had kept a child for two years under a court order, and (b) no proceeding be filed within that time to challenge the order, then the adoption should be considered beyond attack."

The record sufficiently shows that Ruth B. Brunk was kept for two years under a court order by the parties attempting to adopt her, without any proceeding to challenge the order, so under our holding in the *Dean* case the adoption became perfected.

The third question for our consideration involves the bequest to Lola Brinkmann Strojost. It is her contention that through a scrivener's error an intended bequest to her of $2,500 was mistakenly listed in the will as

only $500. Following three bequests of $2,500 each, this item appears in the will:

"To Lola Brinkmann Strotjost. of xxxxxxxxxxxxxx

Furgason Missouri xxxxxxxx $500.00

(The words x'd out are "Farmington, Missouri, $2,500.00" and the amount "$2,500.00" is again x'd out following the words "Furgason, Missouri".)

T. W. M. Boone, the attorney who drafted the will, testified that after he prepared the will it was taken to Mr. Brinkmann, who read it as written and made no correction in this item before signing. It appears that two changes in other items in the typewritten copy of the will were made in pen and ink. Appellant Strojost attempted to show that the bequest as written was a scrivener's error by showing that in earlier wills she had been bequeathed the sum of $2,500.

We think the Chancellor correctly held against this appellant's claim under our ruling in *Jackson* v. *Wolfe*, 127 Ark. 54, 191 S. W. 938. That case involved a suit to reform a will, it being contended that the testator intended to describe a tract of land other than the tract actually described in the questioned devise. We said at pages 56-57 of the opinion in the *Jackson* case: (first quoting from *Eagle* v. *Oldham*, 116 Ark. 565, 174 S. W. 1176)

" 'But while we may feel sure of the testator's intention, we must gather that intention from the will itself. This idea has been expressed in a variety of ways by all the courts. But extrinsic evidence is generally held admissible in the interpretation of wills, not to show what the testator meant, as distinguished from what his words express, but for the purpose of showing the meaning of the words used.'

" . . . In the present case we find no circumstances whatever which would justify this court in declaring that the testator meant by the description used, to convey a tract other than the one which was specifically described. . . . To hold with the plaintiff in this case

would be purely a reformation of the instrument, which in all the cases on that point this court has held could not be done.''

The final issue to be decided is whether Lillian M. Trapp is the owner of a house and lot in Fort Smith, which adjoined the decedent's homeplace. The executor and others have appealed from the Chancellor's finding that the property belongs to her by virtue of a deed executed to her by the decedent; and that Brinkmann had made an enforceable contract to convey or devise said property to her.

Lillian Trapp was taken into the home of George C. Brinkmann and his wife, Lena, when the girl was seven years of age. She was not adopted by them because her father was living and would not give his consent. She lived with them as if she were their daughter until she married at nineteen years of age. There is testimony that from the time Lillian was fourteen years of age until her marriage, she worked for wages which she turned over to the Brinkmanns with the understanding that she would share in their estate as if she were their natural child. Many disinterested witnesses testified that the Brinkmanns had said repeatedly over a period of twenty-five years that Lillian was to receive the real estate in question.

Prior to the death of Lena Brinkmann, she and her husband executed mutual or reciprocal wills. Mr. Boone, who prepared said wills, testified that they were the same in leaving the property of each to the other; both wills with a provision that if the other spouse should predecease the maker, the property in issue should go to Lillian Trapp. Lena Brinkmann's will, unchanged, was admitted to probate on November 26, 1947.

On March 30, 1948, George C. Brinkmann prepared in his own handwriting, executed and acknowledged, a warranty deed conveying said lot to Lillian Trapp. This deed was placed in an envelope which was sealed and upon the face of this envelope Brinkmann wrote: ''Mrs. Lillian Trapp, Farmington, Michigan. See Mrs. Ruth

506

Brinkmann Brunk, 1009 South 11th Street at Fort Smith, Arkansas, for correct address.''

During decedent's last illness he sent for his half-brother, Herman Erke, to come and stay with him in Fort Smith. Sometime prior to his going to the hospital, where he died on January 18, 1949, Brinkmann told Herman of the deed he had executed; pointed out a tin box in his safe where he said the deed was; and directed that it be delivered to Lillian Trapp. Herman's testimony was unsatisfactory as to whether the delivery was to be made immediately or at Brinkmann's death.

After Brinkmann's death, the executor found said deed unrecorded in the lock box of the decedent at the Merchants National Bank of Fort Smith. When Herman had looked for the deed in the tin box at decedent's home he had discovered it was not there; that Brinkmann had been mistaken about where he had placed it. No one had access to the bank lock box after the execution of the deed but decedent himself.

We hold that under the facts as outlined, there was no delivery of the deed. Since we agree with the Chancellor's finding that there was an enforceable contract by Brinkmann to devise this property, and his holding will be affirmed on that ground, we shall not discuss our cases on the requirements for actual or constructive delivery of deeds.

As stated in *Crowell* v. *Parks,* 209 Ark. 803, 193 S. W. 2d 483: ''It has long been the rule of this court that a valid oral contract to make a will or a deed to land may be made, but that the testimony to establish such a contract must be clear, cogent, satisfactory and convincing.'' A number of earlier cases are reviewed in the opinion in the *Crowell* case. We further said in *Offord* v. *Agnew,* 214 Ark. 822, 218 S. W. 2d 370: ''As in other contracts, a promise to make a will cannot be enforced without consideration. The usual type of consideration in contracts of this class is a promise by one party to support and care for another during life in consideration of the other party's agreement to devise the land.''

While a promise of care or support is the usual type there may be such contracts based on other consideration. In the case of *Crews* v. *Crews*, 212 Ark. 734, 207 S. W. 2d 606, an oral contract to devise property was involved in an action by the widow of the decedent. During his lifetime she had joined in the conveyance of property held by the entirety, which was subsequently reconveyed to him. In consideration of the conveyance of the wife's interest, he had agreed to devise the property to her, which oral contract was enforced.

In 4 Page on Wills (3rd Ed), § 1707, p. 828, it is said: "If the contract to bequeath or to devise property is a contract for making joint, mutual, or reciprocal wills, in which the consideration for the promise by A to make a will which contains certain provisions, is a corresponding promise by B to make a will containing similar provisions, the contract is enforceable, and if broken, the promisee may enforce it either at law or in equity." And to quote from § 1712 at p. 850: "A promise to make a will is consideration for a promise to make a will in return; even if a third person is to be the beneficiary."

In some jurisdictions it has been held that the execution of mutual or reciprocal wills by husband and wife at the same time and with similar provisions is of itself sufficient to prove a contract to dispose of property in the manner indicated in the wills. *Chambers* v. *Porter*, Supreme Court of Iowa, June 25, 1921, 183 N. W. 431; *Frazier* v. *Patterson*, 243 Ill. 80, 90 N. E. 216, 27 L. R. A., N. S. 508, 17 Ann. Cas. 1003. However, according to the general rule, the execution of such wills is not of itself evidence of a contract to devise property, but such a contract may appear from the terms of the will. See cases collected in Annotation 43 A. L. R. 1028.

In the case at bar, in addition to the testimony outlined, there was additional evidence of a contract to convey or devise the property in question to Lillian Trapp. Herman Erke testified that both George C. and Lena Brinkmann had told him many times they had put their property together and that Ruth would get the home place and Lillian the property next door. The tenant who

occupied the house in question testified that when he tried to buy the place, Brinkmann said he could not sell it because it belonged to Lillian. Many other witnesses testified that Brinkmann always referred to the property as "Lillian's."

No testimony was introduced to contradict that introduced on behalf of Lillian Trapp. Indeed it is conceded that the decedent wanted her to have the property, but it is argued that since the deed executed by him was not delivered his intention must fail. The Chancellor found "from the evidence that George C. Brinkmann executed said deed pursuant to a contract made with Lillian Trapp, and with his wife, Lena Brinkmann, for the benefit of Lillian Trapp . . ."

Although the decedent erroneously thought he had effectively conveyed the property during his lifetime, we hold that the evidence supports the finding of a contract to convey or devise, and the action of the Chancellor in vesting title in Lillian Trapp will be sustained.

The decree is affirmed.

HOLT, J., not participating.