[Civ. No. 18998. First Dist., Div. One. Nov. 16, 1960.]

GEORGE R. WALTER, JR., et al., Respondents, v. FRANK AUGUST et al., Appellants.

Charles L. Hemmings for Appellants.

Harry M. Gross for Respondents.

DUNIWAY, J.—Appeal from a judgment setting aside a decree of adoption. We conclude that the judgment must be reversed.

On June 10, 1953, Mr. and Mrs. August, the defendants who are appealing in this matter, filed in the Superior Court, Contra Costa County, a petition to have the child, who was then living with them, declared free of the custody and control of his parents, Mr. and Mrs. Walter, the successful plaintiffs below. (Welf. & Inst. Code, § 701, subd. (a).) The petition alleged the names of the parents, and that the petitioners

had no information as to their whereabouts, but did not contain the statements required by Welfare and Institutions Code, section 722, as to the name and residence of a relative residing within the state, nor were such allegations supplied by any affidavit. No notice or citation was served upon or mailed to anyone (*cf.* Welf. & Inst. Code, §§ 777, 779), but a copy of the citation was published pursuant to section 778 of that code. The petition was granted on August 17, 1953.

Also on June 10, 1953, the appellants petitioned to adopt the child. The decree of adoption was granted on November 10, 1953. Over five years later, on December 10, 1958, the respondent natural parents filed the present action, in which they sought to set aside the decree of adoption on grounds of fraud. In an amended answer, the appellants pleaded that the action was barred by the provisions of Civil Code, section 227d.

The court found that the adoption decree was void because the child was not abandoned, the plaintiffs had not failed to provide for him, and they had not consented to the adoption; that proper notice of the petition to declare the child free of their custody was not given, and the decree in that matter was likewise void, because defendants knew that the child had a maternal grandmother living in Contra Costa County, and knew her address, but did not give her the required notice or have the citation served upon her, and that the mother of plaintiff husband resided with defendants during the adoption proceedings. There is evidence sufficient to sustain these findings.

The court refused to find that the allegations in the petition to have the child declared free of the custody of his parents, to the effect that the whereabouts of the latter was unknown to the petitioners (appellants here), were false, and the citation addressed to the parents was duly published. The defect, if any, in the giving of notice in that proceeding, lies in the failure to state the name and address of a relative, and the failure to make service upon such a relative. It would seem at least doubtful that this defect would render the decree entered upon that petition subject to attack by the parents on that ground. However, we do not decide that question because we have concluded that the parents cannot now attack the decree of adoption, even if the other decree, as to custody, is subject to attack by them.

Under Civil Code, section 224, the adoption decree would be voidable at the instance of the respondent parents if they

were not lawfully deprived of the child's custody, since it is admitted that they had no notice of, and never consented to, the adoption. (*In re DeLeon,* 70 Cal.App. 1 [232 P. 738]; *Estate of Smith,* 86 Cal.App.2d 456 [195 P.2d 842]; 2 Armstrong, California Family Law, 1953 ed., 1219.) We use the word "voidable," rather than "void," intentionally. [1] An adoption proceeding is one quasi in rem, and creates a status. (*Estate of Smith, supra,* 86 Cal.App.2d 456, 468 [195 P.2d 842]; *Adoption of Barnett,* 54 Cal.2d 370, 376 [6 Cal.Rptr. 562, 354 P.2d 18].) The adoption court, in the case before us, clearly had jurisdiction of the child and the adopting parents. (*In re DeLeon, supra,* 70 Cal.App. 1, 16 [232 P. 738]; *Miller v. Higgins,* 14 Cal.App. 156, 162 [111 P. 403]; *Estate of Smith, supra,* 86 Cal.App.2d 456, 468 [195 P.2d 842]; *Estate of McKeag,* 141 Cal. 403, 407 [74 P. 1039, 99 Am.St.Rep. 80]; *Adoption of Burton,* 147 Cal.App.2d 125, 130 [305 P.2d 185]; *Adoption of Kelly,* 47 Cal.App.2d 577, 583 [118 P.2d 479].) Lack of consent by the natural parents would, at most, render the decree subject to attack by them. It would not be void in the sense that it could be treated as a nullity, or even attacked directly, by anyone else except the child himself. (*In re Williams,* 102 Cal. 70, 81-82 [36 P. 407, 41 Am.St.Rep. 163]; *Estate of McKeag, supra,* 141 Cal. 403, 407 [74 P. 1039, 99 Am.St.Rep. 80]; *Estate of Grazzini,* 31 Cal.App.2d 168 [87 P.2d 713]; *Estate of Smith, supra,* 86 Cal.App.2d 456, 468 [195 P.2d 842]; *Estate of Martin,* 86 Cal.App.2d 474 [195 P.2d 839]; *Adoption of Richards,* 133 Cal.App.2d 681 [284 P.2d 889]; *Estate of Stanford,* 49 Cal.2d 120, 142 [315 P.2d 681].)

Civil Code, section 227d, provides: "Any action or proceeding of any kind whatsoever to vacate, set aside, or otherwise nullify a decree of adoption on the ground of any defect or irregularity of procedure in the adoption proceeding must be commenced within three years after entry of the decree. Any action or proceeding of any kind whatsoever to vacate, set aside, or otherwise nullify a decree of adoption on any ground other than a defect or irregularity of procedure must be commenced within five years after entry of the decree."

It seems to us too plain for argument that the Legislature intended, by the use of this language, to preclude any attack whatever on a decree of adoption after five years. In holding to the contrary, the court below relied upon our 1950 decision in *Arnold* v. *Howell,* 98 Cal.App.2d 202 [219 P.2d 854]. That case, however, does not support the decision below.

Section 227d was not enacted until 1951 (Stats. 1951, p. 1819), and it would appear that it was adopted for the purpose, among others, of putting a time limit upon the rights of nonconsenting natural parents to attack an adoption decree, as was done in *Arnold*. All that we held in *Arnold* was that natural parents whose consent had been obtained by fraud could attack the decree.

It has been held that " 'The main purpose of adoption statutes is the promotion of the welfare of children, bereft of the benefits of the home and care of their real parents, by the legal recognition and regulation of the consummation of the closest conceivable counterpart of the relationship of parents and child.' . . . The rule of strict construction of our adoption statutes in favor of the natural parents . . . is disapproved." (*Adoption of Barnett*, 54 Cal.2d 370, 377-378 [6 Cal. Rptr. 562, 354 P.2d 18]; and see *Estate of McKeag, supra,* 141 Cal. 403, 408-409 [74 P. 1039, 99 Am.St.Rep. 80]; *Adoption of Burton, supra,* 147 Cal.App.2d 125, 134-136 [305 P.2d 185]; *Adoption of Kelly, supra,* 47 Cal.App.2d 577 [118 P.2d 479].) No doubt the Legislature felt that the possible damage to a child who has been in an adoptive home for five years and is then removed from it by his natural parents is so great as to outweigh the rights of the natural parents.

The facts of this case speak eloquently in favor of the applicability of section 227d. The child was placed with the appellants when he was 6 weeks old. The only home he has known is appellants' home. His natural parents' contacts with him thereafter were minimal, as were their contributions to his support. They moved to Reno, Nevada, in April of 1953, when the child was about 19 months old. They left no forwarding address. From that time, or at most six months later, until late in 1958, they had no contacts with him and contributed nothing to his support, although they always knew where he was. They moved back to California, to Oakland, in 1954, and to Los Angeles in 1955, returning to the Bay area in June 1958. They learned about the adoption in late December 1953, within six weeks after the decree was entered, but took no steps to set it aside for more than five years after it was entered. Thus the child had acquired a new status, both in fact and in law. His natural parents' obligations to him demanded that they care for and support him— which includes a clear obligation on their part to keep track of his whereabouts and his welfare. This they failed for a long time to do. Surely the time had come when it was within

the power of the state, acting in its capacity as *parens patriae,* and in the interests of children such as this one, to say that the parents' rights are finally and irrevocably cut off. (*Cf. In re Evans,* 106 Cal. 562, 565 [39 P. 860].)

Respondents assert that to apply section 227d to this case would deprive them of due process. We think there is nothing in the point. Contract rights are protected by the Constitution, but are validly cut off by statutes of limitation, without the giving of any notice to the party whose rights are lost. Property rights are similarly protected, but can likewise be lost by limitation, with no actual notice to the owner; constructive notice by adverse possession is enough. The "possession" of the child by his adoptive parents is surely analogous. Our courts have held that jurisdictional defects can be cured, in effect, by statutes of limitation. (*Miller & Lux, Inc.* v. *Secara,* 193 Cal. 755, 765 [277 P. 171]; *Elbert, Ltd.* v. *Gross,* 41 Cal.2d 322, 330 [260 P.2d 35]; cf. *Blinn* v. *Nelson,* 222 U.S. 1 [32 S.Ct. 1, 56 L.Ed. 65]; *Wilson* v. *Iseminger,* 185 U.S. 55 [22 S.Ct. 573, 46 L.Ed. 804]; *Saranac Land & Timber Co.* v. *Comptroller of N.Y.,* 177 U.S. 318 [20 S.Ct. 642, 44 L.Ed. 786]; *Vance* v. *Vance,* 108 U.S. 514 [2 S.Ct. 854, 27 L.Ed. 808]; *Hawkins* v. *Barney,* 5 Pet. (U.S.) 457 [8 L.Ed. 190]; *Jackson* v. *Lamphire,* 3 Pet. (U.S.) 280 [7 L.Ed. 679].)

Statutes of limitation are statutes of repose, and are based in part upon the proposition that persons who sleep upon their rights may lose them. We can think of no situation to which the principle is more applicable than that of natural parents who leave their child with others, contribute nothing to his support, and wait for more than five years to attack an adoption which has provided the child with the only home he has ever known. It might be possible to imagine a case which would be of such a character that a court would feel compelled to construe section 227d as admitting of some exception, but this is certainly not such a case. (See *Dean* v. *Brown,* 216 Ark. 761 [227 S.W.2d 623, 627-628]; *Brunk* v. *Merchants National Bank,* 217 Ark. 499 [230 S.W.2d 932, 934]; 2 Armstrong, California Family Law, 1953 ed., 1215.)

The judgment is reversed, with directions to enter judgment for the defendants.

Bray, P. J., and Tobriner, J., concurred.