[No. E051664. Fourth Dist., Div. Two. May 19, 2011.]

Adoption of B.C., JR., a Minor.
E.G. et al., Plaintiffs and Respondents, v.
A.G., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part IIIA.

914

## COUNSEL

Law Offices of Miles & Hatcher and Cornell L. Hatcher for Defendant and Appellant.

Torrence L. Howell for Plaintiffs and Respondents.

Kamala D. Harris, Attorney General, Douglas M. Press, Assistant Attorney General, Richard T. Waldow and Gregory M. Cribbs, Deputy Attorneys General, for California Department of Social Services as Amicus Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**RICHLI, Acting P. J.**—A.G. (the mother) gave birth to a son (the child). When the child was two, he was adopted—supposedly with the mother's written consent—by the mother's mother, E.G. (the grandmother), and her husband, B.C., Sr. (the stepgrandfather). They renamed him B.C., Jr.

When the child was five and a half, the mother filed a motion to set aside the adoption. She alleged extrinsic fraud, in that she had been told that what she was consenting to was a temporary guardianship, not an adoption. The trial court denied the motion as time-barred under Family Code section 9102. The mother appeals.

We will hold that Family Code section 9102 applies to any action or proceeding to set aside an adoption order on any grounds, including, as in this case, extrinsic fraud. We will further hold that Family Code section 9102 does not violate due process, even when applied to a claim that an adoption order is void due to lack of notice and lack of consent, at least under the circumstances of this case. Accordingly, we will affirm.

### I

### FACTUAL AND PROCEDURAL BACKGROUND

The child was born in August 2003. In January 2004, the grandmother filed an application to adopt him. In November 2004, the application was amended

so as to add the stepgrandfather as copetitioner. In April 2005, the mother signed a written consent to the adoption. The State Department of Social Services (the Department) recommended that the petition be granted. In November 2005, the trial court granted the petition.

In May 2010—four years and six months after the entry of the adoption order—the mother filed a motion to set aside the adoption order based on fraud. The grandmother and stepgrandfather (collectively the grandparents), along with the Department, opposed the motion.

The declarations in support of and in opposition to the motion were in sharp factual conflict.

According to the mother, she suffered from severe depression after the child was born; she needed the grandparents' help to care for the child. They told her that they needed to set up a temporary guardianship, for such purposes as the child's health care. She admitted signing the written consent to adoption, but she testified that she thought it was a consent to a temporary guardianship. The social worker who presented it to her did not tell her what it was, did not give her a copy, and did not advise her of her rights in connection with adoption. (See Fam. Code, §§ 8801.3, subd. (b)(1), 8801.5.) When she asked the grandparents for copies of the guardianship documents, they "absolutely refused" to give them to her.

The mother "continued to have a very loving mother-son relationship" with the child. She saw him daily and had visitation with him almost every weekend. It was only after the grandmother filed a request for a temporary restraining order against her (which was denied) that the mother obtained counsel, who discovered that there had actually been an adoption. The mother also claimed that the grandmother had abused her—physically, verbally, and, on one occasion, sexually—when she was growing up.

The grandparents flatly denied the mother's testimony, calling it "full of lies." They denied telling her that they were seeking a temporary guardianship. Rather, they testified, they told her that they were seeking to adopt the child; she told them, "[D]o whatever you want . . . ." She "participated in, and was fully aware throughout the adoption process that [they] were adopting [the child]."

In October 2009, according to the grandparents, there had been an incident in which the mother "was physical[ly] and verbally abusive to all family members" in the child's presence. That was when they sought a restraining order, which was denied for procedural reasons.

The grandparents and the Department (respondents) argued that the motion was untimely under Family Code section 9102, which provides:

"(a) An action or proceeding of any kind to vacate, set aside, or otherwise nullify an order of adoption on any ground, except fraud, shall be commenced within one year after entry of the order.

"(b) An action or proceeding of any kind to vacate, set aside, or nullify an order of adoption, based on fraud, shall be commenced within three years after entry of the order."

In response, the mother argued that Family Code section 9102 did not apply to a proceeding based on extrinsic fraud and/or lack of due process.

The trial court ruled that the motion was time-barred under Family Code section 9102.

II

FAMILY CODE SECTION 9102 APPLIES TO A PROCEEDING TO SET ASIDE AN ADOPTION BASED ON EXTRINSIC FRAUD

■ " 'The basic rules of statutory construction are well established. "When construing a statute, a court seeks to determine and give effect to the intent of the enacting legislative body." [Citation.] " 'We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. [Citation.] The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context.' [Citation.] If the plain, commonsense meaning of a statute's words is unambiguous, the plain meaning controls." [Citation.] But if the statutory language may reasonably be given more than one interpretation, " ' "courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute." ' " ' [Citations.]" (*Catlin v. Superior Court* (2011) 51 Cal.4th 300, 304 [120 Cal.Rptr.3d 135, 245 P.3d 860].)

"We independently review questions of statutory construction. [Citation.]" (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529 [120 Cal.Rptr.3d 531, 246 P.3d 612].)

■ The mother moved to set aside the adoption order based on extrinsic fraud. "Extrinsic fraud" refers to "circumstances in which 'the aggrieved

party [has been] deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' [Citation.]" (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 643, fn. 5 [29 Cal.Rptr.2d 152, 871 P.2d 204].)

Family Code section 9102, subdivision (b) fixes a three-year limitations period for setting aside an adoption order "based on fraud." Respondents argue that "fraud" includes extrinsic fraud; thus, based on what would seem to be the plain meaning of the statute, the mother's claim is barred.

*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215 [113 Cal.Rptr.3d 147], however, held that a similar statute of limitations did *not* apply to a claim based on extrinsic fraud. There, the defendant moved to set aside a default judgment for child support. (*Id.* at p. 1222.) The trial court found that the judgment had been based on a false proof of service and that this constituted extrinsic fraud. Nevertheless, it ruled that relief was barred by Family Code section 3691, which sets a limitations period for challenging a support judgment based on either actual fraud or lack of notice. (*County of San Diego*, at p. 1224.)

The appellate court reversed. It explained: "[E]ven where relief is no longer available under statutory provisions, a trial court generally retains the inherent power to vacate a default judgment or order on equitable grounds where a party establishes that the judgment or order was void for lack of due process [citation] or resulted from extrinsic fraud or mistake [citation]." (*County of San Diego v. Gorham, supra*, 186 Cal.App.4th at p. 1228.) "[W]e decline to interpret Family Code section 3691 as preempting a trial court's traditional or inherent equitable power to set aside a child support order or judgment like the one in this case . . . . The legislative history regarding Family Code section 3691 reveals it was enacted . . . with the purpose of expanding, not limiting, avenues of relief from child support orders obtained by default judgments for obligors who have not received notice of the order . . . . [Citation.] . . . [T]o construe Family Code section 3691 as foreclosing a party from seeking equity where . . . 'jurisdiction' . . . has been obtained by a false proof of service, which essentially perpetrates a fraud on the court would, we believe, be unfair, against the above intent of the Legislature, and a violation of fundamental due process." (*Id.* at p. 1232.)

Under *Gorham*, the meaning of Family Code section 9102 is not necessarily plain. We therefore look to its legislative history. As originally enacted in 1992, it provided:

"(a) An action or proceeding of any kind to vacate, set aside, or otherwise nullify an order of adoption on the ground of any defect or irregularity of procedure in the adoption proceeding shall be commenced within three years after entry of the order.

"(b) An action or proceeding of any kind to vacate, set aside, or otherwise nullify an order of adoption on any ground other than a defect or irregularity of procedure shall be commenced within five years after entry of the order." (Fam. Code, former § 9102; Stats. 1992, ch. 162, § 10, pp. 464, 711.)

It was substantively identical to its immediate statutory predecessor, Civil Code former section 228.15 (Stats. 1990, ch. 1363, § 3, p. 6090), which in turn was substantively identical to its immediate statutory predecessor, Civil Code former section 227d (Stats. 1951, ch. 638, § 5, p. 1819).

While Civil Code former section 227d was still in effect, *Walter v. August* (1960) 186 Cal.App.2d 395 [8 Cal.Rptr. 778] (discussed in more detail in pt. III, *post*) had held that it applied to an action to set aside an adoption based on fraud, including lack of consent and lack of notice. (*Id.* at pp. 397–398.) Ordinarily, "[w]e . . . presume that the Legislature is aware of judicial interpretations of a statute. ' "When a statute has been construed by the courts, and the Legislature thereafter reenacts that statute without changing the interpretation put on that statute by the courts, the Legislature is presumed to have been aware of, and acquiesced in, the courts' construction of that statute. [Citation.]" [Citations.]' [Citation.]" (*People v. Galvan* (2008) 168 Cal.App.4th 846, 854–855 [85 Cal.Rptr.3d 776] [Fourth Dist., Div. Two].) The Legislature reenacted Civil Code former section 227d and recodified it as Family Code section 9102 essentially without change. Thus, it appears that the Legislature intended Family Code section 9102 to apply even to claims of extrinsic fraud.

But there is more. In 1995, the Legislature enacted Assembly Bill No. 898 (1995–1996 Reg. Sess.) (Assem. Bill 898), which amended Family Code section 9102 to make it read essentially the way it reads today.[1] (Stats. 1995, ch. 567, § 1, p. 4409.)

Assembly Bill 898, as originally introduced, provided: "No birth parent may seek to overturn the adoption of his or her child after the child has been in the custody of the adoptive parents for a period of one year after entry of the order of adoption where the consent of either birth parent was given in

[1] The only difference was that the limitations period in Family Code section 9102, subdivision (b) for an action based on fraud was five years. (Stats. 1995, ch. 567, § 1, p. 4409.) This was reduced to three years in 2000. (Stats. 2000, ch. 937, § 6, p. 6980.)

accordance with the requirements of this division . . . ." (Assem. Bill 898 (1995–1996 Reg. Sess.) as introduced Feb. 22, 1995.)[2]

The Assembly amended the bill, however, so as to delete the requirement that a birth parent had to have given valid consent. The amended version of the bill simply provided: "An action or proceeding of any kind to vacate, set aside, or otherwise nullify an order of adoption on any ground shall be commenced within one year after entry of the order." (Assem. Bill 898 (1995–1996 Reg. Sess.) as amended Mar. 27, 1995, italics omitted.)[3]

In connection with this version, the author of the bill explained that he wanted to reduce the statute of limitations in all cases to one year. He argued that "the current three-year and five-year statutes of limitation are simply too long. In these cases, the child has bonded with the adoptive parents and knows only those parents. . . . [I]t is not in the best interests of these children to disrupt the adoption after so long a period of time, just to protect the rights of the birth parents." (Sen. Com. on Judiciary, Analysis of Assem. Bill 898 (1995–1996 Reg. Sess.) as amended Mar. 27, 1995, p. 3.)[4]

The Senate Judiciary Committee, however, expressed concern about this amended version: "What if the birth parent never received the required notice? What if the adoptive parents knowingly participated in a fraud upon the birth parent or parents?" (Sen. Com. on Judiciary, Analysis of Assem. Bill 898, *supra*, at p. 4.) "There is a point at which a fraudulently obtained adoption is very much akin to a kidnapping. Most people would not argue that a kidnaper who managed to elude authorities for a sufficiently long period of time should be able to keep the kidnaped child because the stability of the child was paramount. This is because stability, while an important consideration, is not the only consideration when determining the best interests of the child. The fitness of an individual to parent has been determined to be a factor paramount to considerations of stability when determining the best interests of a child. . . . [¶] It is a viable argument that an adoptive parent who knowingly participated in some fraud on the birth parents in order to obtain the child, is not a fit parent to raise the child and it is in the best interests of the child to be removed from the adoptive placement." (*Ibid.*)

---

[2] Available at <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_0851-0900/ab_898_bill_950222_introduced.html> (as of May 19, 2011).

[3] Available at <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_0851-0900/ab_898_bill_950327_amended_asm.html> (as of May 19, 2011).

[4] Available at <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_0851-0900/ab_898_cfa_950327_101910_sen_comm.html> (as of May 19, 2011).

Presumably to accommodate these concerns, the author agreed to a compromise, and the Senate amended the bill accordingly. (Sen. Com. on Judiciary, Analysis of Assem. Bill 898 (1995–1996 Reg. Sess.) as amended July 13, 1995, pp. 1–3.)[5] As further amended, Family Code section 9102, subdivision (a) provided that the statute of limitations in an action to set aside an adoption "on any ground, except fraud" would be one year. (Assem. Bill 898 (1995–1996 Reg. Sess.) as amended July 13, 1995, italics omitted.)[6] However, Family Code section 9102, subdivision (b) provided that the statute of limitations in an action to set aside an adoption "based on fraud" would be three years. (*Ibid.*, italics omitted.)[7]

Evidently these amendments obviated the concerns that had been expressed, as no similar concerns were raised again in any subsequent analysis of the bill. (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 898 (1995–1996 Reg. Sess.) as amended Aug. 31, 1995;[8] Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill 898 (1995–1996 Reg. Sess.) as amended Sept. 8, 1995;[9] Assem. Floor Analysis Concurrence in Sen. Amends. to Assem. Bill 898 (1995–1996 Reg. Sess.) as amended Sept. 7, 1995.[10])

In light of this history, it seems undeniable that the Legislature intended the three-year limitations period of Family Code section 9102, subdivision (b) to apply even to *extrinsic* fraud. The original bill would have set a limitations period if, and only if, a birth parent had given valid consent. The Legislature, however, chose to delete this provision and thus to make the limitations period apply even if a birth parent's consent was invalid. Moreover, the author explained that the evil that the bill was intended to prevent was the disruption of an adoption, even after the child had bonded with the adoptive parents, "just to protect the rights of the birth parents." (Sen. Com. on Judiciary, Analysis of Assem. Bill 898 (1995–1996 Reg. Sess.) as amended Mar. 27, 1995, p. 3.)

---

[5] Available at <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_0851-0900/ab_898_cfa_950713_150358_sen_comm.html> (as of May 19, 2011).

[6] Available at <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_0851-0900/ab_898_bill_950713_amended_sen.html> (as of May 19, 2011).

[7] As a result of a subsequent Senate amendment, this was changed to five years in the final bill. (Assem. Bill 898 (1995–1996 Reg. Sess.) as amended Aug. 31, 1995, available at <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_0851-0900/ab_898_bill_950831_amended_sen.html> [as of May 19, 2011].) As already noted, however, it was changed back to three years in 2000.

[8] Available at <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_0851-0900/ab_898_cfa_950831_151824_sen_floor.html> (as of May 19, 2011).

[9] Available at <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_0851-0900/ab_898_cfa_950908_153159_sen_floor.html> (as of May 19, 2011).

[10] Available at <http://www.leginfo.ca.gov/pub/95-96/bill/asm/ab_0851-0900/ab_898_cfa_950918_120627_asm_floor.html> (as of May 19, 2011).

The Legislature expressly acknowledged that there were countervailing policies. The Senate Judiciary Committee pointed out that a fraudulently obtained adoption was practically a kidnapping; thus, it argued that there should be *no* limitations period in cases of fraud. It also argued that an adoptive parent who would stoop to fraud was not a fit parent, and it would be in the best interests of the child to be removed from his or her custody. These arguments would seem to apply to extrinsic fraud as much as to intrinsic fraud, if not more so. Once the author agreed to extend the limitations period in cases of fraud to three years, however, opponents of the bill dropped these objections.

In sum, then, the Legislature arrived at the final statute through a process of horse trading. It recognized that the interest of a birth parent whose consent was obtained by fraud was deserving of some protection; however, it determined that the appropriate form of protection was a longer limitations period. The child's countervailing interests in permanence and security demanded that, at some point, the rights of even a defrauded birth parent be cut off. We see no room in this reasoning to make an exception for cases of extrinsic fraud.

The mother argues that, in this particular case, there is little threat of disruption of the child's life. She asserts that she has continued to be involved in his life; she also promises us that, if the adoption were set aside, she "would ensure that [the grandparents] continued to have contact" with the child. This is beside the point. Even though the Legislature's underlying policy goal was to minimize disruption of the lives of adopted children, Family Code section 9102, as ultimately adopted, does not distinguish between cases of more disruption and less disruption; it applies in all cases.

The mother also argues that Family Code section 9102, subdivision (b) should not start to run until the fraud is (or reasonably should have been) discovered. She relies on *Adoption of Sewall* (1966) 242 Cal.App.2d 208 [51 Cal.Rptr. 367]. *Sewall*, however, actually supports the opposite conclusion.

*Sewall* involved a petition to set aside an *adult* adoption that had occurred almost 12 years earlier, based on, among other things, fraud. (*Adoption of Sewall, supra*, 242 Cal.App.2d at pp. 210–212.) At the time, Civil Code former section 227d barred any action to set aside an adoption after five years. (*Sewall*, at pp. 221–222.) The petitioner argued, however, that the applicable statute of limitations was the general statute for fraud, Code of Civil Procedure section 338, which did not begin to run until the fraud was, or reasonably should have been, discovered. (*Sewall*, at p. 222.)

The court held that Civil Code former section 227d did not apply to adult adoptions. (*Adoption of Sewall, supra*, 242 Cal.App.2d at pp. 223–226.) It

observed that " '. . . the social interest in adult adoptions and the problems involved in the administration of the program are quite different from the social interest and problems involved in the program for the adoption of minors and particularly infants.' [Citation.]" (*Id.* at p. 226.) Thus, it stated, "[T]he Legislature did not intend, in [Civil Code former] section 227d, to alter, *with regard to persons of legal age*, the longstanding rule that, as to a suit in equity to set aside a decree on the ground of extrinsic fraud, the period of limitations commences to run only when the fraud is or reasonably should be discovered." (*Ibid.*, italics added.) Throughout its opinion, however, it accepted that if Civil Code former section 227d *did* apply, it began to run before discovery of the fraud.

█ Family Code section 9102, subdivision (b), by its terms, runs from "entry of the [adoption] order." This is unambiguous. It is impossible to construe it as running from the discovery of the grounds for setting aside the order. Moreover, any such construction would be inconsistent with the Legislature's intent, as already discussed, to set an outside limit of three years, even for claims of lack of notice and extrinsic fraud.

█ We therefore conclude that "fraud," within the meaning of Family Code section 9102, subdivision (b), includes extrinsic fraud. Hence, the trial court correctly ruled that the mother's motion was time-barred under Family Code section 9102.

III

FAMILY CODE SECTION 9102 DOES NOT VIOLATE DUE PROCESS

The mother also argues that Family Code section 9102 violates due process when applied to a birth parent who was not given notice, as required by due process, of the adoption proceeding.

A. *Forfeiture*[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. *Merits*

█ "Since the interest of a parent in the companionship, care, custody, and management of his children is a compelling one, ranked among the most basic of civil rights [citations], the state, before depriving a parent of this

[*]See footnote, *ante*, page 913.

interest, must afford him adequate notice and an opportunity to be heard. [Citations.]" (*In re B. G.* (1974) 11 Cal.3d 679, 688–689 [114 Cal.Rptr. 444].) The failure to give a birth parent notice of a proceeding to adopt his or her child violates due process. (*Armstrong v. Manzo* (1965) 380 U.S. 545, 550 [14 L.Ed.2d 62, 85 S.Ct. 1187].)

In California, ordinarily, an adoption petition need not be served on the birth mother. The birth mother has notice, however, because the adoption simply cannot proceed unless she has given her signed written consent.[11] (Fam. Code, §§ 8604, subd. (a), 8605, 8606, subds. (d), (e), 8700, subd. (a), 8801.3, subds. (b), (c), 8802, subd. (a)(2), 8804, subd. (c), 8806, 8814, 8815, subd. (b), 8822, subd. (a), 9003, 9006, subd. (b).) Thus, it has been said that "a legal parent's valid consent is a jurisdictional prerequisite to an adoption . . . . [Citation.]" (*Sharon S. v. Superior Court* (2003) 31 Cal.4th 417, 446 [2 Cal.Rptr.3d 699, 73 P.3d 554].)

It is hornbook law that a judgment rendered without the notice required by due process is void. (E.g., *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 291 [62 L.Ed.2d 490, 100 S.Ct. 559].) And it is equally hornbook law that a void judgment may be set aside at any time. (E.g., *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 661 [16 Cal.Rptr.3d 76, 93 P.3d 1020].)

This boilerplate, however, does not tell us whether the Legislature could set a limitations period for a claim that a judgment is void. Even a due process claim can be made subject to a statute of limitations. " ' "A constitutional right is always subject to reasonable statutory limitations as to the time within which to enforce it, if the constitution itself does not provide otherwise. . . ." ' [Citations.]" (*Kuperman v. San Diego County Assessment Appeals Bd. No. 1* (2006) 137 Cal.App.4th 918, 931–932 [40 Cal.Rptr.3d 703].) And "[s]tatutes of limitation are consistent with due process where they allow the plaintiff or petitioner a reasonable time to bring the action. [Citations.]" (*Kupka v. Board of Administration* (1981) 122 Cal.App.3d 791, 797 [176 Cal.Rptr. 214] [Fourth Dist., Div. Two].)

Some out-of-state cases hold that a statute of limitations that cuts off a birth parent's right to challenge an adoption order on due process grounds does, in itself, violate due process. (*White v. Davis* (1967) 163 Colo. 122, 125–126 [428 P.2d 909]; *In re D.C.* (Ind.Ct.App. 2008) 887 N.E.2d 950, 959; *In re Adoption of Knipper* (1986) 30 Ohio App.3d 214, 216 [30 Ohio B. 371, 507 N.E.2d 436]; *Matter of Adoption of Lori Gay W.* (1978) 1978 OK 140

[11] Although there are exceptions to these broad general rules, we disregard those that do not apply here.

[589 P.2d 217, 220]; *Phariss v. Welshans* (1997) 150 Or.App. 498, 503 [946 P.2d 1160]; *F.E. v. G.F.M.* (2001) 35 Va.App. 648, 664–666 [547 S.E.2d 531].) Others, however, hold to the contrary. (*Syrovatka v. Erlich* (8th Cir. 1979) 608 F.2d 307, 310–311; *Hogue v. Olympic Bank* (1985) 76 Or.App. 17, 28 [708 P.2d 605]; *In re Adoption of Trystyn D.* (2000) 259 Neb. 539, 547 [611 N.W.2d 112].)

Although this precise issue has not yet been decided with respect to Family Code section 9102, there is relevant California authority. In *Miller & Lux Inc. v. Secara* (1924) 193 Cal. 755 [227 P. 171], the California Supreme Court held that a six-month statute of limitations for a challenge to an irrigation assessment was valid, even if the challengers had not received due notice of the formation of the irrigation district. (See *id.* at p. 763.) It acknowledged that a "thirty-day statute of limitations . . . is void as not allowing a reasonable period of time to the property owner, who has not received legal notice of the hearing before the board of equalization, within which to commence an action to contest the assessment." (*Id.* at p. 765.) It held, however, that a six-month statute of limitations was "not unreasonable." (*Ibid.*) It concluded: "[A] total lack of jurisdiction due to absence of notice sufficient to constitute due process of law cannot be cured by a curative act or by a curative provision in the statute, but we see no reason why such a defect may not be cured, in effect, by a statute of limitations, provided the latter is not unreasonable and is therefore valid." (*Ibid.*)

*Kaufman v. Gross & Co.* (1979) 23 Cal.3d 750 [153 Cal.Rptr. 577, 591 P.2d 1229] is similar. There, the same property was sold at successive times, first to the defendants, to satisfy a street lighting bond, and then to the plaintiff's predecessor in interest, to satisfy a deed of trust. (*Id.* at pp. 752–754.) The plaintiff argued that the first sale, to the defendants, was void, because the notice of the street lighting lien sale "was constitutionally deficient under standards of procedural due process." (*Id.* at pp. 753–754.) The trial court held that the action was barred under Streets and Highways Code section 6571, which, at the time, required that an action to set aside a street lighting lien sale had to be brought within six months after the issuance of the deed to the purchaser. (*Kaufman*, at p. 754.)

On appeal, the plaintiff argued "that this statute of limitations cannot operate to bar a proceeding attacking a deed suffering from 'jurisdictional' defects rendering it void *ab initio*." (*Kaufman v. Gross & Co., supra*, 23 Cal.3d at p. 754.) The Supreme Court disagreed. It held: "[S]uch a contention cannot form the basis of an attack on an otherwise valid tax deed following the expiration of a reasonable statutory period of limitation . . . ." (*Id.* at p. 759, fn. omitted.) "[A] 'jurisdictional' defect in tax sale proceedings which arises

from a failure of notice—even if such defect be constitutional in stature—may be barred by a reasonable statutory period of limitation . . . .” (*Id.* at p. 755.)

It acknowledged a possible exception to this rule in cases where the owner was in “ ‘undisturbed possession’ ” (*Kaufman v. Gross & Co., supra*, 23 Cal.3d at p. 756) and thus had no “reasonable means of alerting himself to the tax proceedings affecting his property.” (*Id.* at p. 759.) However, “an owner who is *himself* delinquent may not be said to be in ‘undisturbed possession’ because the very fact of his delinquency operates to charge him ‘with notice that if he claims the invalidity of a tax deed to the state or of the proceedings leading up to it he must bring his action for that purpose within the statutory time.’ [Citation.]” (*Id.* at p. 756.) Likewise, an owner chargeable with constructive knowledge of the tax proceedings under the recording statutes would not be in undisturbed possession. (*Id.* at pp. 757–759.)

Finally, in *Walter v. August, supra*, 186 Cal.App.2d 395, the court held that an action to set aside an adoption based on lack of notice and lack of consent was barred by the statute of limitations. There, the prospective adoptive parents had filed a petition to declare the child free of parental custody and control. (*Id.* at p. 396.) However, they did not give proper notice to the birth parents. Moreover, the birth parents never consented to the adoption. (*Id.* at pp. 397–398.) At the time, Civil Code former section 227d—the statutory predecessor of Family Code section 9102—required that an action to set aside an adoption be filed within not more than five years after the adoption decree. (*Walter*, at p. 398.) Five years and one month after entry of the adoption order, the birth parents filed an action to set aside the adoption. (*Id.* at p. 397.)

The court held that the action was barred. (*Walter v. August, supra*, 186 Cal.App.2d at p. 398.) It specifically rejected the argument “that to apply [Civil Code former] section 227d to this case would deprive [the birth parents] of due process. . . . Contract rights are protected by the Constitution, but are validly cut off by statutes of limitation, without the giving of any notice to the party whose rights are lost. Property rights are similarly protected, but can likewise be lost by limitation, with no actual notice to the owner; constructive notice by adverse possession is enough. The ‘possession’ of the child by his adoptive parents is surely analogous. Our courts have held that jurisdictional defects can be cured, in effect, by statutes of limitation. [Citations.]” (*Id.* at p. 400.)[12]

---

[12] *Walter* also indicated that lack of notice and lack of consent made the adoption decree voidable, rather than void. (*Walter v. August, supra*, 186 Cal.App.2d at pp. 397–398.) This seems questionable, in light of the general principles, as already discussed, that a birth parent is entitled to notice of a proceeding to adopt his or her child as a matter of due process and that

The court concluded by stating, "It might be possible to imagine a case which would be of such a character that a court would feel compelled to construe [Civil Code former] section 227d as admitting of some exception, but this is certainly not such a case. [Citations.]" (*Walter v. August, supra*, 186 Cal.App.2d at p. 400.) The mother argues that "[t]he case at bar is precisely the type of situation anticipated by the *Walter* court's noted exception[,] which has not been questioned in the 50 years since it was published." (Italics added.) This begs the question, however, of the scope of the exception, which *Walter* left undefined.

We believe the exception, if it exists at all, would apply when the birth parent is in a position analogous to that of an owner in undisturbed possession, under *Kaufman*. In other words, a birth parent who had no reasonable means of becoming aware of the adoption proceeding might be able to claim that a statute of limitations barring an action to set aside the adoption does, in itself, violate due process. As *Walter* noted, however, in most cases, the birth parents have at least constructive notice from the adoptive parent's "adverse possession" of the child. (*Walter v. August, supra*, 186 Cal.App.2d at p. 400.)

Here, the mother had *actual knowledge* that there was *some* kind of legal proceeding going on concerning custody of the child. She claimed that, due to the grandparents' fraud, she believed it was a temporary guardianship, rather than an adoption. Even if so, she had a duty to keep herself informed about the supposed guardianship proceeding. It should have been a red flag that the grandparents "absolutely refused" to give her copies of any of the guardianship documents. She also had actual knowledge that the grandparents had had physical custody of the child for over six years. At least under these circumstances, a statute of limitations that cuts off her right to set aside the adoption does not violate due process.

We find additional support for our conclusion in *David B. v. Superior Court* (1994) 21 Cal.App.4th 1010 [26 Cal.Rptr.2d 586]. That was a dependency case in which the birth father's whereabouts were unknown; he was given notice by publication. (*Id.* at pp. 1013–1014.) After his parental rights were terminated (*id.* at p. 1014), he filed an application for relief from default under Code of Civil Procedure section 473.5. He demonstrated that the mother had refused to give him any information about the child and that he had been in touch with child support authorities in an effort to obtain custody.

a judgment rendered in the absence of the notice required by due process is void. We need not decide this question, however, because we conclude that, in appropriate circumstances, a reasonable statute of limitations can validate even an otherwise void judgment.

He also demonstrated that the social services agency had not used reasonable diligence to locate him before serving him by publication. (*David B.*, at p. 1015.)

The appellate court held that Welfare and Institutions Code section 366.26, former subdivision (h) (now subd. (i)(1)), which provided that an order terminating parental rights was " 'conclusive and binding' " and that " 'the court shall have no power to set aside, change, or modify it,' " required the trial court to deny the motion. (*David B. v. Superior Court, supra*, 21 Cal.App.4th at pp. 1017–1018, italics omitted.) It noted that, because the social services agency had not used due diligence, service by publication was not adequate notice, and hence the judgment was void. (*Id.* at p. 1016.) Nevertheless, it held that Welfare and Institutions Code section 366.26, former subdivision (h) did not violate due process. (*David B.*, at pp. 1018–1020.)

It explained: "In *Mathews* v. *Eldridge* (1976) 424 U.S. 319, 335 [47 L.Ed.2d 18, 33, 96 S.Ct. 893], the United States Supreme Court enumerated three elements to be considered in determining the requirements of due process: the private interest involved, the government's interest, and the risk of erroneous decisions from the use of existing procedures. [¶] A parent's interest in the custody, care, and management of his or her children is a compelling one, ranked among the most basic of civil rights. [Citation.] However the state also has an urgent interest in child welfare and shares the parent's interest in an accurate and just decision. [Citation.] Further, the child has a compelling right to a stable and permanent placement in a family unit which will allow the caretaker to make a full emotional commitment to the child. [Citation.]" (*David B. v. Superior Court, supra*, 21 Cal.App.4th at pp. 1018–1019.)

The court noted that, under the statutory dependency scheme, a parent is entitled to notice at every step of the dependency, which in the case before it had lasted 18 months. Thus, a parent has repeated opportunities to assert a jurisdictional challenge. (*David B. v. Superior Court, supra*, 21 Cal.App.4th at p. 1019.) It added that allowing more time for a challenge would mean that "a child and the child's caretakers would have to live with uncertainty, a fact which implicates the state's interest in the welfare of the child and the child's own right to a stable environment. Under the statutory scheme parental rights may not be terminated until a significant period of time has passed, during which a parent may apply to the court's inherent power to vacate an order or judgment for lack of personal jurisdiction. Given the need for stability and certainty in child dependency matters, we do not believe that the Legislature acted arbitrarily in its restriction of the time in which juvenile court orders may be attacked for lack of notice." (*Id.* at pp. 1019–1020.)

Here, similarly, the three *Mathews v. Eldridge* factors demonstrate that Family Code section 9102, as applied to this case, does not violate due process. First, like the *David B.* court, we acknowledge that a parent's interest in the custody of his or her child is compelling. Here, however, because the mother voluntarily surrendered custody of the child to the grandparents for a substantial period of time, thus allowing them to become the parental figures in his life, her interest is considerably attenuated. Indeed, under *Kaufman* and *Walter*, it would probably be attenuated in *any* case in which a birth parent had actual or constructive notice of a proceeding to adopt his or her child, yet took no action to protect his or her interest in custody.

Second, as in *David B.*, the child and the adoptive parents have an interest in the security and stability of the adoptive placement, and the state shares this interest. In fact, once an adoption petition has been granted, the adoptive parents have the same interest in custody that a birth parent has. Certainly once the child has been with the adoptive parents for at least three years, as Family Code section 9102, subdivision (b) would require, this interest has become a compelling one.

Third, also as in *David B.*, the statutory scheme minimizes the risk of an erroneous deprivation. The adoption process provides numerous safeguards for the birth parents. A birth parent who places a child for adoption must first be advised of his or her rights. (Fam. Code, § 8801.5.) The birth parent's consent to adoption must be witnessed. (*Id.*, §§ 8801.3, subd. (b), 8814, subd. (a).) The birth parent has ample opportunity to revoke his or her consent. (*Id.*, § 8814.5.) There must be an independent investigation (*id.*, §§ 8712, 8811, 8908, 9001) and an independent report to the court regarding the proposed adoption (*id.*, §§ 8715, 8807, 8914, 9001). The Department oversees the whole process.

An erroneous deprivation could still occur. A social worker could be negligent or crooked. In this case, the mother alleges that the social worker failed to advise her of her rights and failed to tell her what she was signing. The chances of this, however, are minimal; thus, the risk is outweighed by the shared interest of the state, the child, and the adoptive parents in finality. "Now and then an extraordinary case may turn up, but constitutional law like other mortal contrivances has to take some chances, and in the great majority of instances no doubt justice will be done. [Citation.]" (*Blinn v. Nelson* (1911) 222 U.S. 1, 7 [56 L.Ed. 65, 32 S.Ct. 1].)

 We therefore conclude that Family Code section 9102, as applied in this case, is constitutional.

IV

## DISPOSITION

The order appealed from is affirmed. Respondents are awarded costs on appeal.

King, J., and Codrington, J., concurred.